IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| Clarence W. Alston, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:21cv1112 (CMH/WEF) |
| | ) | |
| Officer J. Smith, | ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION</u>

This matter is before the Court upon a Motion for Summary Judgment [Dkt. No. 26] filed by Officer J. Smith ("defendant," "defendant Smith," "Officer Smith," or "Smith"), the sole named defendant in this civil rights action brought by Virginia state prisoner Clarence Alston ("plaintiff"). Alongside his Motion, Officer Smith filed a <u>Roseboro</u>[1] notice advising plaintiff of his right and the appropriate manner in which to respond. <u>Id.</u> In response, as will be discussed in more significant depth below, plaintiff filed a raft of letters opposing the entry of judgment against him. <u>See, e.g.</u>, [Dkt. Nos. 28, 29, 30, 31, 32, 33, 34, 35]. These letters, though, merely rehashed the allegations in the Complaint or described entirely new alleged abuses irrelevant to this action, were not sworn under the penalty of perjury, and were at times difficult to understand. Accordingly, it was not clear to the Court that any one of plaintiff's letters was intended to serve as a formal opposition to defendant's Motion for Summary Judgment. In deference to plaintiff's <u>pro se</u> status, the Court provided plaintiff several opportunities to seek discovery and file a comprehensive, formal opposition. <u>See</u> [Dkt. Nos. 36, 45, 49]. Although plaintiff availed himself of the additional time by filing dozens of written pages and some

---

[1] <u>See</u> <u>Roseboro v. Garrison</u>, 258 F.2d 309 (4th Cir. 1975).

relevant documents, the evidence he has supplied is insufficient to create any material dispute of fact. Accordingly, defendant's Motion for Summary Judgment will be granted, and this action will be dismissed.

## I. Background

**A.**   <u>**Procedural History**</u>

Plaintiff filed this civil rights action under 42 U.S.C. § 1983 in October 2021, alleging that Officer Smith, an employee at Lawrenceville Correctional Center, utilized excessive force upon him on the night of July 18, 2021, or very shortly after midnight the following morning. [Dkt. No. 1] at 4-5. Specifically, plaintiff alleges that he heard Officer Smith arguing with an inmate and later told him: "[If] [y]ou keep arguing with these young dudes, they are going to beat your ass." <u>Id.</u> Smith then allegedly opened the tray slot on plaintiff's cell door and "started jabbing [him] with the big tray slot key." <u>Id.</u> at 5. Later, plaintiff asserts, Smith returned to the cell and "kick[ed] [him] on the arm." <u>Id.</u> Plaintiff claims that he has three scars resulting from this incident. <u>Id.</u>

On August 3, 2022, Officer Smith filed the Motion for Summary Judgment now at issue. [Dkt. No. 26]. The Motion included a clear <u>Roseboro</u> notice informing plaintiff that his response should consist of, or be accompanied by, "affidavits (written statements signed before a notary public and under oath) or … sworn statements (bearing certificates that they are signed under penalty of perjury)."[2] <u>Id.</u> at 1.

After receiving defendant's Motion for Summary Judgment, plaintiff submitted seven letters, each of which requested that the Court deny defendant's Motion, <u>see</u> [Dkt. Nos. 28, 30,

---

[2] The Court provided plaintiff a similar warning on March 21, 2022, when it ordered the United States Marshals Service to serve process on Officer Smith. <u>See</u> [Dkt. No. 9] at 2.

31, 32, 33, 34, 35]; however, despite the clear guidance plaintiff received via <u>Roseboro</u> notices, none of these letters were sworn or notarized. Even so, the Court inferred from these letters that plaintiff hoped to obtain discovery materials to support his claim and thus, on October 31, 2022, issued an Order directing plaintiff to issue discovery requests to defendant's counsel within thirty days. [Dkt. No. 36]. At plaintiff's request, the Court extended that timeline on December 16, 2022, providing an additional thirty days for plaintiff to request discovery. [Dkt. No. 39]. In the same Order, the Court set a deadline for the filing of any opposition to the Motion for Summary Judgment thirty days after receipt of defendant's responses to any discovery requests plaintiff issued. <u>Id.</u>

In the weeks that followed, plaintiff continued to file unsworn letters and for the first time filed new documentation relevant to his claims. [Dkt. Nos. 41, 43]. The documents came in the form of medical records created shortly after the alleged incident described in the Complaint. <u>See</u> [Dkt. No. 43-1]. In the same filings, though, plaintiff appeared to renew his requests for discovery, <u>see</u> [Dkt. Nos. 41, 43], which suggested to the Court that he had not yet filed all of his arguments in opposition to defendant's Motion for Summary Judgment. Consequently, on January 25, 2023, the Court issued another Order allowing plaintiff more time to comply. [Dkt. No. 45]. In that Order, the Court made clear that plaintiff should file "a SINGLE, COMPREHENSIVE opposition to defendant J. Smith's … pending [Motion]" and that the opposition had to contain "any and all argument, documentation, affidavits, or other evidence [plaintiff] [wanted] the Court to consider." <u>Id.</u> at 2.

On March 24, 2023, the Court received a letter from plaintiff that inquired as to the status of this case and described alleged abuses ongoing at Keen Mountain Correctional Center, where plaintiff had been transferred. [Dkt. No. 46]. Although the Court had by then given plaintiff

3

more than sufficient opportunity to file a single, comprehensive opposition to defendant's Motion—an opportunity plaintiff never took—the Court was constrained to issue yet another order on April 25, 2023, in light of the Fourth Circuit's decision in Shaw v. Foreman, 59 F.4th 121 (4th Cir. 2023).  In Shaw, a panel of the Fourth Circuit reversed a previous decision rendered by this Court, finding that even in the absence of a Rule 56(d) affidavit, a plaintiff's "implied" request for production of video evidence requires a court to delay consideration of a summary judgment motion until the evidence "surface[s]."  Shaw, 59 F.4th at 129.  In accordance with Shaw, the Court directed counsel for defendant to "either (1) submit any video evidence relevant to this action or (2) certify to the Court that no such evidence exists and explain why the video, to the extent it ever existed, is now inaccessible."  [Dkt. No. 49] at 2.

Counsel for Officer Smith timely responded, explaining that the GEO Group, which operates Lawrenceville Correctional Center, has no control over the surveillance systems at the facility.  [Dkt. No. 51] at 1.  Rather, the Virginia Department of Corrections ("VDOC") maintained and operated those systems.  Id.  Counsel further averred that in spring 2022, the VDOC "arranged the replacement of [Lawrenceville's surveillance] systems and took control of all hardware associated with the prior system, including hard drives that would have maintained any footage."  Id. at 2.  Thus, counsel concluded, the footage plaintiff requested in response to the Court's discovery-related orders "was not available at the time Plaintiff requested [it]" and could not be produced in this action.  Id.

In summary, the Court has given plaintiff many months to compile evidence and oppose Officer Smith's Motion for Summary Judgment.  It has even, in line with Shaw, advocated on plaintiff's behalf for the production of yet more evidence relevant to plaintiff's claim.  It appears

now, however, that all existing and relevant evidence is before the Court, and there is therefore no need to further delay consideration of Officer Smith's Motion for Summary Judgment.

**B.**     **Facts**

      *1.*     *Sources of Evidence Contributing to Statement of Undisputed Facts*

As alluded to above, although plaintiff has been prolific in his letter-writing to the Court, he has not filed any singularly identifiable opposition to defendant's Motion for Summary Judgment. The Court, on this basis, could look only to the movant's submissions in adjudicating the pending Motion for Summary Judgment. See Fed. R. Civ. P. 54(c)(3) ("The Court need consider only the cited materials."); Guarino v. Brookfield Township Trustees, 980 F.2d 399, 406 (6th Cir. 1992) ("[T]he Rule requires the non-moving party to do its own work, and to assist the trial court by responding to the motion, pointing out as specifically as is reasonably possible facts that might demonstrate the existence of genuine issues."). In deference to plaintiff's pro se status, though, the Court has not done so. Instead, it has instead scoured the record for any evidence admissible at the summary judgment stage. That evidence does not include any of the allegations included in plaintiff's Complaint or numerous letters, as these documents were not sworn under penalty of perjury, and the information they contain therefore may not be considered at this stage of the litigation. See, e.g., United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) (unsworn argument does not constitute evidence to be considered in opposition to summary judgment motion).

The Court also pauses briefly to address the lack of video evidence before it. In some circumstances, the failure to preserve certain types of evidence may allow for an adverse inference against the party responsible for the evidence's safekeeping. This rule is enshrined in both case law and the Federal Rules of Civil Procedure See, e.g., Vodusek v. Bayliner Marine

Corp., 71 F.3d 148, 155 (4th Cir. 1995) ("Under the spoliation of evidence rule, an adverse

inference may be drawn against a party who destroys relevant evidence."); Fed. R. Civ. P.

37(e)(2). Plaintiff has not requested an adverse inference here, nor would the Court find

imposing such a remedy appropriate. Indeed, there is no evidence before the Court that Officer

Smith—who served as a correctional officer, not an information technology officer—had any

control over capturing or maintaining the video in question. In fact, Smith has provided

uncontested information that this was *not* the case. See [Dkt. No. 51]. Accordingly, any

intentional or unwitting destruction of the video cannot be attributed to Smith, and allowing for

an adverse interest against him would be an undue sanction. Cf. Rivera v. Dickenson, No.

7:14cv573, 2015 WL 5565273, at *6 n.7 (W.D. Va. Sept. 21, 2015) ("Moreover, Rivera presents

no evidence that defendant Scott or any of his medical supervisors had any responsibility over

the photographs at any time. Therefore, I cannot find that Rivera is entitled to have any adverse

inference drawn against Scott on summary judgment, based on the loss of the video footage and

photographs."); Fed. R. Civ. P. 37(e)(2) (providing that only upon finding that a "party acted

with the intent to deprive another party of the information's use in the litigation" may the court

impose severe sanctions such as granting a default judgment before trial or instructing the jury to

presume "that the lost information was unfavorable to the party").

      Consistent with the above, the Court concludes that only the following pieces of evidence

may contribute to the summary judgment record: the affidavits and documents submitted with

defendant's Memorandum in Support of Motion for Summary Judgment [Dkt. No. 27-1 through

27-3] and Reply [Dkt. No. 29-1] as well as the medical records plaintiff submitted on January 19,

2023. [Dkt. No. 43-1].

2.    *Statement of Undisputed Facts*

With respect to plaintiff's claim that Officer Smith utilized excessive force upon him, the following facts—as compiled in accordance with the description above—are undisputed.

At all times relevant to this action, plaintiff was a state prisoner housed at Lawrenceville Correctional Center ("LCC"), a prison located in Brunswick, Virginia.  Officer Smith served as a Correctional Officer at the same facility.  [Dkt. No. 27-1] at 1, ¶ 1.  On July 17, 2021, Lt. Keiara Walker, who also worked at LCC, created an incident report related to plaintiff's conduct.  Id. at 3, ¶ 6; [Dkt. No. 27-2].  According to the report, at 12:28 p.m. on July 17, 2021, plaintiff "was observed cutting his left wrist."  [Dkt. No. 27-2].  Plaintiff "sustained a minor scratch across the left wrist" and suffered "minor bleeding," id., and was assessed by medical and mental health professionals before being placed "in the suicide protocol" and given a "green smock and blanket" to wear,  id.; [Dkt. No. 27-1] at 2, ¶ 7.

Early the following morning, on July 18, 2021, Officer Smith was on duty in LCC's segregation unit, where plaintiff was housed.  [Dkt. No. 27-1] at 2, ¶ 4.  At an unspecified time, Smith sought to close the tray slot on plaintiff's cell door, but plaintiff repeatedly placed his hand in the slot, stopping Smith from successfully closing it.[3]  Id.  Eventually, plaintiff appeared to comply with Smith's order to remove his hand, but as Smith closed the tray slot, plaintiff once more returned his hand to the opening.  Id.  Smith's hand was closed in the door as a result.  Id.

---

[3] Plaintiff strenuously opposes the proposition that the tray slot door was already open at the beginning of his interaction with Smith.  See, e.g., [Dkt. No. 30] at 2; [Dkt. No. 52] at 3.  Rather, plaintiff argues that Smith affirmatively opened the tray slot before attacking him with a key.  See id.  But, as discussed above, plaintiff has not introduced any admissible evidence to substantiate his position.  The Court therefore accepts the defendant's proffered facts as uncontested.

7

Correctional Officer Samuel Davis, like Officer Smith, was assigned to LCC's segregation unit at the time of this incident. [Dkt. No. 29-1] at 1, ¶¶ 3-4. On the morning in question, Davis "heard an inmate arguing with Ofc. Smith" and therefore "went to the cell to investigate." Id. at 2, ¶ 5. There, Smith informed Davis that plaintiff had thrown a liquid at him and that plaintiff was obstructing the tray slot with his hand, preventing him from closing it. Id. Plaintiff asserted to Davis that Smith had attacked him with the tray slot key. Id. at ¶ 6. When plaintiff showed Davis his arm, however, Davis saw "no visible scratching, redness, bleeding, or other evidence that [plaintiff] had been assaulted as he alleged." Id. Smith denies kicking plaintiff as plaintiff alleges, see [Dkt. No. 27-1] at 2, ¶ 8, and Davis attests that he did not witness Smith kick plaintiff, see [Dkt. No. 29-1] at 2, ¶ 8.

Several days later, on July 23, 2021, LPN Hensley treated plaintiff for a "self inflicted scrape" caused by a "chicken bone" and documented the incident. [Dkt. No. 43-1]. According to the report, plaintiff had dragged the bone upon his left forearm, causing a "superficial scratch/scrape." Id. at 2. Plaintiff explained that he had caused this injury because he was "pissed off because they put Ofc Smith [in his housing unit]." Id. at 1. On each of the two following days—July 24 and 25—Hensley indicated in her notes that plaintiff had "0 other injuries at this time." Id. at 1, 3.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018).

Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial … by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III. Analysis

Plaintiff's claim that Officer Smith used excessive force upon him arises under the Eighth Amendment of the United States Constitution. The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. Wilson v. Seiter, 501 U.S. 294, 296-97 (1991).

To prove an Eighth Amendment excessive force claim, a prisoner-plaintiff must satisfy "both an objective and a subjective component." Dean v. Jones, 984 F.3d 295, 302 (4th Cir. 2021); Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019) (same). To satisfy the objective element, a plaintiff must show that the force used upon him was sufficiently serious. Brooks, 924 F.3d at 112. This "is not a high bar" and requires a plaintiff to show only that the defendant employed "something more than 'de minimis' force." Id. (quoting Hudson v. McMillian, 503 U.S. 1, 10 (1992)); see also Wilkins v. Gaddy, 559 U.S. 34, 39 (2010) (per curiam).

To satisfy the subjective element, a plaintiff must prove that the defendant "acted with a sufficiently culpable state of mind." Brooks, 924 F.3d at 112 (internal quotation marks and citation omitted). Specifically, the plaintiff must show that the defendant's state of mind was one of "wantonness in the infliction of pain." Id. at 112-13 (quoting Iko v. Shreve, 535 F.3d 225,

239 (4th Cir. 2008)). This, the Fourth Circuit has made clear, is a "demanding standard." Id. at 112. The core question a court must ask with respect to this element is whether the force used by the prison official was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U. S. at 6 (internal quotation marks and citation omitted).

Several factors are pertinent to this question. A court must consider the need for the application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made by prison officials to temper the severity of their response. Lombardo v. City of St. Louis, 141 S. Ct. 2239, 2241 (2021).

Here, the record at summary judgment supports entry of judgment in Officer Smith's favor. The Court first assesses the objective element—whether the use of force in question was "sufficiently serious"—and concludes that no reasonable fact finder could resolve this issue in plaintiff's favor. Indeed, the evidence before the Court suggests that the only use of force Officer Smith employed was the minimal use of force required to close plaintiff's tray slot door.[4] Cf. Doe v. Ryan, No. 16-12068-IT, 2018 WL 158026, at *5 (D. Mass. Mar. 30, 2018) (finding, at motion to dismiss stage, that allegation correctional officer did not use "any additional level of force than what [was] appropriate to close a food tray slot" described only a "de minimis" use of physical force insufficient to support a viable excessive force claim).

If this were not enough, the subjective element also cuts in Officer Smith's favor. The Court addresses the relevant factors contributing to this element beginning with the first: the

---

[4] As noted above, plaintiff disputes this version of events and claims that Smith did not close but opened his tray slot door in order to attack him. As also discussed above, there is no admissible evidence to support plaintiff's offered version of events.

need for any use of force at all. Here, Smith has introduced evidence that plaintiff repeatedly

refused orders to remove his hands from his tray slot door. Plaintiff's defiance justified at least

some minimal use of force. Cf. Williams v. Benjamin, 77 F.3d 756, 762 (4th Cir. 1996) (finding

guards' decision to use force justified in the face of inmates' refusal to cease unruly and

disruptive behavior); see also Karavias v. Virginia, No. 7:12cv624, 2013 WL 3879701, at *3

(W.D. Va. July 26, 2013) ("Plaintiff's arms did not belong outside of his cell when returning the

lunch tray, and his persistent refusal to comply with staff's orders required some type of force to

restore discipline and order.").

  With respect to the second criterion—the relationship between the need for force and the

amount of force used—the evidence on record demonstrates that defendant used only as much

force as was necessary to close the tray slot. Although the record implies that plaintiff's hand

may have temporarily been closed in the tray slot door, there is no evidence from which one

could infer that Officer Smith closed the door any more firmly than was needed or sought to hurt

plaintiff to force him to remove his hand from the opening. Cf. Funk v. Battle, No. 1:19cv1196,

2019 WL 2526184, at *3 (E.D. Va. June 18, 2019).

  The third factor a court must consider as to the subjective element of an excessive force

claim is the extent of the injury suffered by the plaintiff. Here, the record contains no evidence

to support the notion that plaintiff suffered any injury whatsoever from his interaction with

Officer Smith. Although plaintiff claims to have scars from the incident, his allegations are

unsworn and therefore may not be considered by the Court. The evidence the Court *may*

consider tells a different story. Indeed, contemporaneous medical records suggest that plaintiff

did not suffer any wound from his interaction with Smith,[5] and Officer Davis attests to have inspected plaintiff's arm and to have seen no evidence of any injury. Accordingly, this factor tips in Smith's favor.

Next, the Court must consider the threat to the safety of staff and inmates as reasonably perceived by prison officials. This factor does not weigh heavily in either party's favor. The only evidence relevant to this issue is evidence that the interaction between plaintiff and Officer Smith was loud enough to attract the attention of at least one other correctional officer—Officer Davis. Indeed, Davis attests to having heard plaintiff and Smith arguing and that he responded to plaintiff's cell as a result. The fact that the interaction between plaintiff and Officer Smith created a sufficient din to attract the attention of another officer in the area could possibly indicate that correctional staff believed a threat to institutional safety existed, but this evidence does not speak to Smith's own perceived existence of a threat.

Finally, the Court must consider defendant Smith's efforts to temper the severity of his response. The Court considers this factor almost irrelevant to the facts of this case because one can hardly imagine a less severe use of force than the one illustrated in the summary judgment record, and any tempering of such a de minimis use of force would be almost impossible.

---

[5] Plaintiff argues that these medical records support his version of events—or at least do not tell the full story. Indeed, plaintiff has annotated these records, claiming that LPN Hensley, who authored them, was "covering for Officer J. Smith" by failing to indicate that plaintiff had any other injuries at the time of his treatment. See [Dkt. No. 43] at 3 ("Lt. Holden, Sgt. S. Davis, and Nurse Hensley all fail[ed] to write the incident report on what happen[ed]. A crime was committed and they fail to report it."); [Dkt. No. 43-1] at 3 (suggesting that, by failing to write any report, Nurse Hensley was "covering for" defendant). Thus, plaintiff appears to suggest that the *lack* of any documentation as to Smith's alleged assault is itself evidence that the assault occurred. But this absence of proof cannot be deemed affirmative evidence supportive of plaintiff's position. Although a district court is of course bound to construe facts in the light most favorable to the nonmovant—here, the plaintiff—there is a difference between construing facts or inferences favorably to a party and accepting as true that party's unsupported conjecture.

*\*\**

In summary, the record at summary judgment supports only one conclusion: that Officer Smith is entitled to judgment in his favor as to plaintiff's claim that Smith used excessive force upon him. Although plaintiff clearly takes issue with Smith's position, he offers no evidence to call it into question. To be clear, this was not for lack of opportunity. Both the Court and the defendant informed plaintiff, via Roseboro notices, of the proper manner in which to respond to a motion for summary judgment—via sworn statements or affidavits. The Court also offered plaintiff many months to request evidence from other parties or to produce evidence of his own. He could have used this time to prepare affidavits from himself or others but did not do so. Making matters even more unfavorable for plaintiff was the fact that the documentary evidence he *did* produce actually undermined the notion that he suffered any injury.

For these reasons, the Court is constrained to enter judgment in Officer Smith's favor.

## IV. Conclusion

For the reasons stated above, through an Order that will accompany this Memorandum Opinion, defendant J. Smith's Motion for Summary Judgment will be granted, and this action will be dismissed.

Entered this _31st_ day of _August_ 2023.

_Claude M. Hilton_
United States District Judge

Alexandria, Virginia

13